IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Orlando Cole, | ) | C/A No. 3:15-1923-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Marty Ballard; Premier Constructors, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Orlando Cole, filed this employment action alleging racial harassment and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. against his former employer, Premier Constructors, Inc. ("Premier").[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 28.) After two warnings from the court and three extensions, Cole ultimately filed an untimely response in opposition. (ECF No. 51.) Having reviewed the parties' submissions and the applicable law, the court finds that Premier's motion for summary judgment should be granted.

## BACKGROUND

The following facts are either undisputed or are viewed in the light most favorable to Cole, to the extent they find support in the record. Cole, who is African American, worked for Premier,

---

[1] Cole's Complaint also raised a state law intentional infliction of emotional distress claim; however, in response to Premier's motion for summary judgment, Cole withdrew that claim. (ECF No. 51 at 3 n.1.)  Further, it appears that Defendant Marty Ballard was never served with process. (See Order, ECF No. 53.) Accordingly, the court recommends that Defendant Ballard be dismissed from this action without prejudice. See Fed. R. Civ. P. 4(m).



a company that performs electrical contracting work, as an electrician from approximately August 25, 2012 until January 11, 2013. During that time, Cole worked as a crew member performing electrical work at Fort Jackson. Marty Ballard served as the foreman of this crew, and Cole testified that soon after he began working for Premier, Ballard began making racial jokes and using racial epithets, specifically the word "nigger."[2] Cole further testified that about one or two months after he began working for Premier, Ballard progressed to directing the racial epithets at Cole. Cole testified that he asked Ballard to stop the jokes. One or two weeks before Cole separated from employment with Premier, Cole reported Ballard's conduct to James Oliver, Premier's project manager overseeing the Fort Jackson job. Cole stated that Ballard's conduct improved only for a few days before he resumed the racial epithets. A week or two later, Cole again reported Ballard's conduct to Oliver. Soon thereafter, on January 10, 2013, Cole met with Freeman Bell (an owner of Premier), Oliver, and another employee of Premier in Aiken, South Carolina. Cole indicated that following that meeting, Bell mentioned another crew Cole could work with, but Bell then discovered there was not any work for Cole with that crew. Cole testified that Bell then told Cole that he needed to return to Ballard's crew. Cole further testified that he could not return to working with Ballard, indicating that he could no longer handle Ballard's continuing to refer to him as a "nigger," and thereafter he submitted a letter of resignation to Oliver.

      The defendant has presented the following additional facts, which Cole has not disputed, that provide additional background as to Cole's allegations. Bell, who is African American, testified that on January 10, 2013, he became aware of Cole's complaints regarding Ballard and held a meeting

---

[2] Premier disputes much of Cole's testimony; however, for purposes of this summary judgment, the court, as well as Premier, views the facts in the light most favorable to Cole.



in his office.³ Bell stated that he, Oliver, Cole, and another individual associated with Premier (Mr. Dunton) attended the meeting to address Cole's claims. Bell further stated that, during the meeting, Cole revealed that he allegedly had recordings of Ballard's racial harassment on his cell phone, but Cole would not allow Bell to listen to the entirety of the recordings. Cole testified that he believed Mr. Dunton was trying to delete the recordings, prompting Cole to take his phone back. However, Bell and Oliver stated that they were unable to discern what was being said on the recordings and who was speaking. Bell testified that he informed Cole that racial harassment would not be tolerated, pleaded for Cole to go back to work, and gave Cole his personal cell phone number to call him directly if the harassment happened again. Bell further represented that once he validates that an employee engaged in unfair practices, it is his normal practice to terminate such an employee. Bell stated that after speaking with Cole, he contacted Ballard, who admitted joking around with Cole but denied using the term "nigger." Bell also directed Oliver to be more proactive and to find out what was going on out at the job site. Bell testified that at the conclusion of the meeting he believed Cole would return to work the next day; instead, Cole resigned the following day.

Cole filed the instant action on May 6, 2015, asserting harassment based on his race in violation of Title VII. Cole also alleges that he was constructively discharged.

---

³ The court notes that prior to filing this civil action, it appears that Cole had a hearing before a hearing officer with the South Carolina Department of Employment and Workforce ("DEW") concerning the denial of his unemployment benefits. References to Bell's and Oliver's testimony stem from this hearing. (See ECF Nos. 28-4 & 51-2.)



**DISCUSSION**

A.      **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there



will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Direct Evidence and Burden Shifting Framework**

A plaintiff asserting a claim of unlawful discrimination may proceed through two avenues of proof.  First, he may directly prove through direct or circumstantial evidence that a protected characteristic such as race was a motivating factor in the decision which adversely affected him.  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*).  Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested . . . decision." Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)).  "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the [ ] decisionmaking process and had a determinative influence on the outcome.' " Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).

Alternatively, when direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework.  Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII).  The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142.  Once a defendant meets this burden by producing affidavits or testimony



demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext for discrimination." Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence

that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

C.      Defendant's Motion for Summary Judgment

   1.      Title VII: Harassment/Hostile Work Environment

Title VII prohibits creating or allowing a hostile work environment based on race, color, religion, sex, or national origin. See Baqir v. Principi, 434 F.3d 733, 746 n.14 (4th Cir. 2006). Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted) (Title VII); see also Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir 2015). However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (Title VII). Moreover, federal employment statutes are not "general civility code[s]." Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII); Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 335 (4th Cir. 2010) (Title VII).

To make out a hostile work environment claim under federal anti-discrimination laws, a plaintiff must show that (1) he experienced unwelcome harassment; (2) the harassment was based on his race or gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing



liability on the employer. Baqir, 434 F.3d at 745-46; see also Boyer-Liberto, 786 F.3d at 277; Pueschel v. Peters, 577 F.3d 558, 564-65 (4th Cir. 2009).

In its motion, Premier challenges Cole's ability to establish the fourth element.[4] Premier argues that Cole cannot show a basis to impute liability to the employer because Cole did not report the alleged harassment until immediately before he quit, denying the defendant the opportunity to take remedial action. For the reasons that follow, the court agrees that Cole cannot establish a *prima facie* case of harassment because he has failed to establish a basis for imposing liability on Premier.

In cases of coworker harassment, liability may be imposed on an employer "if it knew or should have known about the harassment and failed to take effective action to stop it."[5] Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 334 (4th Cir. 2003) (*en banc*). "Once the employer has notice, then it must respond with remedial action 'reasonably calculated to end the harassment.' " E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 319 (4th Cir. 2008) (quoting Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995)).

Accepting Cole's testimony as true,[6] upon Cole's first reported complaint to Oliver, Ballard's conduct initially ceased. When Cole reported Ballard's conduct had resumed, a meeting with the

---

[4] Because the court agrees with Premier on this point, it need not address Premier's argument as to the third element of the *prima facie* case.

[5] The court notes that the standard if the harassment is committed by a supervisory employee is different. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). However, in this case, the defendant argues that Ballard was not Cole's supervisor for purposes of Title VII. See Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013). Cole does not refute this argument and, in fact, applies the standard for coworker harassment in his memorandum.

[6] However, the court notes that as pointed out by the defendant, contrary to Cole's testimony that the racial harassment began soon after he began working for Premier, Cole's EEOC Charge of Discrimination listed the earliest date discrimination took place as December 12, 2012, (see ECF No. 28-6), approximately a month before he separated from employment.



owner of Premier and Oliver was promptly held. Moreover, as summarized above, Bell's unrefuted testimony reveals that during the meeting he informed Cole that racial harassment would not be tolerated, pleaded for Cole to go back to work, and gave Cole his personal cell phone number to call him directly if it happened again. Premier presented unrefuted testimony that Bell's normal practice is to terminate employees who are engaging in unfair practices once those practices are substantiated. There is further no dispute that after speaking with Cole, Bell contacted Ballard, who admitted joking around with Cole but denied using the term "nigger." Bell also directed Oliver to be more proactive and to find out what was going on out at the job site. However, Cole did not return to work the day after the meeting; instead, he resigned. Cole generally argues that Premier should have offered Cole leave with pay pending an investigation immediately upon hearing Cole's allegations. However, Cole's proposed alternate preferred solution does not mean that Premier's actions were not also reasonably calculated to end the harassment. See Barbara T. Lindemann, Paul Grossman & C. Geoffrey Weirich, Employment Discrimination Law 20-98 (5th ed. 2012) (observing that "the most significant immediate measure an employer can take in response to a [] harassment complaint is to launch a prompt investigation to determine whether the complaint is justified") (quoting Swenson v. Potter, 271 F.3d 1184, 1193 (9th Cir. 2001)); Matthiesen v. Autozoners, LLC, No. 2:15-CV-0080-TOR, 2016 WL 1559580, at *6 (E.D. Wash. Apr. 18, 2016) (finding where an employee quit rather than continue working pending an investigation of her complaint that the employee "cannot now assert that [the employer] failed to promptly and adequately respond to her sexual harassment claim when she quit before they had an opportunity to investigate the matter, verify [the employee's] allegations, and determine the best resolution for the issues between [the alleged harasser] and [the employee] and therefore, her claim was not imputed to the employer). Based on

the record before the court, Cole has failed to forecast evidence from which a reasonable factfinder could infer that Premier failed to take action to stop the harassment once Premier knew of it or that Premier failed to "respond with remedial action reasonably calculated to end the harassment."[7] Sunbelt Rentals, Inc., 521 F.3d at 319; see also Ocheltree, 335 F.3d at 334; cf. Amirmokri, 60 F.3d at 1131-32 (finding there was inconsistent evidence on whether the employer's action was prompt where it was not clear whether anyone ever investigated the harassment complaint which was made months before the employee resigned and that a reasonable factfinder could find the employer's response was merely a "slap on the wrist").

Based on the foregoing, the court finds that Cole has failed to establish a *prima facie* case of racial harassment based on the record in this case. Accordingly, the court concludes that the defendant's motion for summary judgment should be granted as to that claim.

### 2.     **Constructive Discharge**

Cole also alleges that Premier constructively discharged him from his position, while Premier contends that Cole voluntarily resigned. In this case, no reasonable jury could find based on the

---

[7] To the extent that Cole also relies on an EEOC determination that includes a finding that Premier failed to take effective action to stop the harassment and specifically states that "there is reasonable cause to believe [Premier] violated Title VII" (ECF No. 51-3 at 1), the court observes that this determination "is conclusory in nature." Ihekwu v. City of Durham, 129 F. Supp. 2d 870, 883 n.3 (M.D.N.C. 2000) ("Without knowing on what the EEOC relied in drawing its conclusion, this Court is reluctant to afford the EEOC's determination great weight because this Court must conduct its own independent investigation based upon the evidence presented."). Further, a conclusory statement that "reasonable cause" existed to believe a violation had occurred "is a tentative determination, and not a letter of violation that the Company in fact violated Title VII." Cary v. Carmichael, 908 F. Supp. 1334, 1342 (E.D. Va. 1995) (citing E.E.O.C. v. Manville Sales Corp., 27 F.3d 1089, 1095 (5th Cir. 1994) (stating that a letter of reasonable cause is more tentative than a letter of violation and holding that although the former may be admissible, the latter may be unduly prejudicial as evidence before a jury in a *de novo* trial)), aff'd sub nom., Cary v. Anheuser Busch, Inc., 116 F.3d 472 (4th Cir. 1997).



evidence presented that Cole was constructively discharged. To establish that he was constructively discharged, Cole must show that the defendant created intolerable working conditions in a deliberate effort to force him to resign. Whitten v. Fred's, Inc., 601 F.3d 231 (4th Cir. 2010), abrogated in part on other grounds, Vance v. Ball State Univ., 133 S. Ct. 2434 (2013); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995). A constructive discharge occurs only when a reasonable person in the employee's position would have felt compelled to resign. See Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004). "An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 n.2 (4th Cir. 2004). Cole has presented no evidence that Premier took or failed to take any action in a deliberate effort to force him to resign. Cf. Amirmokri, 60 F.3d at 1132-33 (providing as an example that "intent may be inferred from a failure to act in the face of known intolerable conditions" and stating that "the employer's response must be reasonably calculated to end the intolerable working environment"). Moreover, all of the evidence compels the conclusion that the defendant requested Cole to return to work and believed he would do so.

**RECOMMENDATION**

Based on the foregoing, the court recommends that the defendant's motion for summary judgment be granted (ECF No. 28).

                                                                                                           Paige J. Gossett
                                                                                                           UNITED STATES MAGISTRATE JUDGE

January 26, 2017
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).