# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| ORLANDO COLE,            )  | |
|                          )  | Civil Action No.: 3:15-cv-01923-MBS |
|       Plaintiff,         )  | |
|                          )  | |
| v.                       )  | ORDER AND OPINION |
|                          )  | |
| PREMIER CONSTRUCTORS, INC. and )  | |
| MARTY BALLARD,           )  | |
|                          )  | |
|       Defendants,        )  | |

Plaintiff Orlando Cole ("Plaintiff"), filed the instant action alleging racial harassment and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Sections 2000e, et seq., against his former employer, Premier Constructions, Inc. ("Premier"), and another employee, Marty Ballard ("Ballard'). ECF No. 1

## I. RELEVANT FACTUAL AND PROCEDURAL INFORMATION[1]

Plaintiff is an African-American. He worked as an electrician at Premier from approximately August 25, 2012, until January 11, 2013. *Id*. at 2. During that time, Plaintiff worked under the supervision of Marty Ballard, who served as the foreman of Plaintiff's crew. Plaintiff alleges that, not long after beginning his work on the electrical crew, Ballard began making racial remarks about African-Americans, specifically using racially offensive epithets. *Id*. Plaintiff claims that, as time went on, Ballard began directing the racial epithets directly at Plaintiff, often in the presence of other members of the crew. *Id*. Between late December 2012 and early January 2013, Plaintiff spoke with his Premier Project Manager James Oliver to alert him of Ballard's conduct. ECF No. 51 at 2. There is no record of whether Oliver spoke to Ballard

---
[1] The following facts are either undisputed or viewed in the light most favorable to Plaintiff.

about the issue; however, it is undisputed that after Plaintiff contacted Oliver, Ballard ceased to make racial remarks for a few days.

After a short period of relief, Plaintiff claims that Ballard began to make racially offensive statements again and added commentary on stereotypes concerning African-Americans and their work ethic. *Id*. at 1. Plaintiff again went to Oliver to alert him of the issue, and Oliver notified one of the owners of the company, Freeman Bell, who is also African-American. *Id*. at 2. Once notified, the three men and another employee of Premier met to discuss the issue further. During that meeting, Plaintiff told Bell and Oliver that he had a video recording on his cell phone of Ballard's racial remarks; however, he only played a portion of the recordings. ECF No. 28-4 at 10. Plaintiff later reflected that he did not show the recordings in their entirety because he believed that someone in the meeting would attempt to delete the recordings from his phone. *Id*.

Bell informed Plaintiff that he would speak to Ballard, and that Premier had zero tolerance for discrimination or harassment. At the conclusion of the meeting, Bell instructed Plaitniff that he would further investigate the issue, and instructed Plaintiff to return to work the next day. ECF No. 51-1 at 17. Plaintiff asserts that he was unable to return to what he deemed to be a hostile work environment. As a result, he resigned the next day, January 11, 2013. ECF No. 51 at 2.

On February 10, 2013, Plaintiff filed an Initial Charge of Discrimination with the South Carolina Human Affairs Commission. ECF NO. 28-1 at 4. The Department of Employment and Workforce completed a fact finding interview and subsequently denied Plaintiff's claims for unemployment benefits. ECF No. 28-7. Plaintiff appealed the decision to the Appeal Tribunal. On May 22, 2013, following a hearing on the issue, the tribunal affirmed the determination and denied Plaintiff's request for unemployment benefits, finding that he voluntarily resigned his

position with Premier. ECF No. 28-9. Next, Plaintiff appealed to the Appellate Panel, where the decision to deny him benefits was again affirmed. *Id*. ECF No. 28-8.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On September 4, 2014, the EEOC issued a Determination notifying Plaintiff of his right to sue. ECF No. 51-23. The present action was filed on May 6, 2015 alleging intentional infliction of emotional distress, (2) racial harassment under Title VII, and (3) constructive discharge under Title VII. On August, 5, 2016, Defendants filed a motion for summary judgment to which Plaintiff replied in opposition on October 31, 2016. ECF No. 28, 51. Following Defendants motion for summary judgment, Plaintiff withdrew his intentional infliction of emotional distress claim. ECF No. 51 at 3, n. 1.

Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial handling. On January 26, 2017, the Magistrate Judge issued a Report and Recommendation ("Report"), recommending Defendants motion for summary judgment be granted. ECF No. 56. Plaintiff filed objections to the Report on February 13, 2017, to which Defendants filed a reply on February 27, 2017. ECF No. 61, 62.

## II. LEGAL STANDARDS

### A. Magistrate Review

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's Report and Recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. *Diamond v.*

*Colonia Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Opriano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

### B.  Summary Judgment

Pursuant to Federal Rules of Civil Procedure Rule 56(a), the court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 24, 251-52 (1986). Any inference drawn from the facts should be viewed in the light most favorable to the non-moving party. *United States v. Diebold*, *Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S 317-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue of fact.

### III. DISCUSSION

#### A.  *Harassment and Hostile Work Environments Under Title VII*

Title VII makes it unlawful for employers to discriminate against an individual based on race, color, religion, sex, or national origin. 42 U.S.C.A. § 2000e-2(a)(1). To that end, employers are prohibited from requiring individuals to work in hostile work environments. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 272 (4th Cir. 2015). A work environment is hostile when "the workplace [is]. . . permeated with discriminatory behavior that is sufficiently severe or

4

pervasive to create a discriminatorily hostile or abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 17 (1993).

To establish a prima facie case for a hostile work environment claim under anti-discrimination law, a claimant must show that "(1) he experienced unwelcome harassment; (2) the harassment was based on his race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."[2] *Baqir v. Principi*, 434 F.3d 733, 746 (4th Cir. 2006). "Liability may be imputed to the employer if the employer had actual or constructive knowledge of the existence of a hostile working environment and took no prompt and adequate remedial action." *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995). Further, to show the harassment was sufficiently severe or pervasive to alter the conditions of employment, a plaintiff must show "that he perceived, and a reasonable person would perceive, the work environment to be abusive." *Id*. at 1131. When the alleged harassment is between coworkers, liability may be imposed on an employer "if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 334 (4th Cir. 2003)(*en banc*).

In the Report, the Magistrate Judge found that Plaintiff "has failed to forecast evidence from which a reasonable factfinder could infer that Premier failed to take action to stop the harassment once Premier knew of it or that Premier failed to 'respond with remedial action reasonably calculated to end the harassment.'" ECF No. 56 at 10 (*EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008). Plaintiff objects to this finding, arguing that Premier's

---

[2] As the Magistrate Judge notes, Defendants argue, and Plaintiff does not refute that Defendant Ballard is not a "supervisor" for the purposes of Title VII because Ballard does not have the authority to hire, fire, promote, demote, transfer, or discipline employees at Premier. *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013); *See also*, ECF No. 56 at n. 5.

5

suggestion that Plaintiff return to work with the man whom he claimed harassed him was not a reasonable remedy. Instead, Plaintiff asserts, "A reasonable employer intent on completing an investigation and intent on making proper remedial action would have offered Plaintiff leave with pay as an alternative to returning to work with his harasser who was aware of his racial harassment allegations." ECF No. 61 at 4.

As the Magistrate Judge notes, however, an employer is not required to impose the specific remedial actions asserted by an employee who alleges discriminatory conduct. ECF 56 at 9. Indeed, Plaintiff cannot be sure how Premier would have proceeded with an investigation into the matter because he resigned the day after meeting with Premier's owner. While Plaintiff argues that the meeting with Mr. Bell was not the first time that he raised the issue, it was, in fact, the first time that Mr. Bell was informed of the problem. Evidence shows that Mr. Bell informed Plaintiff that the company does not tolerate racial discrimination and that he would look into the matter further. Mr. Bell also gave Plaintiff his personal cell phone number and told him to call him if any other issues were to occur. ECF No. 51-1 at 21, ECF No. 28-4 at 22. Additionally, Mr. Bell states, and Plaintiff does not dispute, that Mr. Bell attempted to put Plaintiff on another project; however, there were no more projects available that would allow Plaintiff to work in his areas of specialization. *Id*. The court finds Plaintiff is unable to establish a prima facie case for employment discrimination because he is unable to show that there is some basis for imposing liability on his former employer.

### B. Constructive Discharge

To make a claim for constructive discharge, an employee must show that "an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc*., 383 F.3d 180, 187 (4th Cir. 2004). "Intent may be

shown by evidence that an employee's resignation was the reasonably foreseeable consequence of the employer's conduct . . . [F]or example, intent may be inferred from a failure to act in the face of known intolerable conditions." *Amirmokri v. Baltimore & and Elec. Co*., 60 F.3d 1126, 1133 (4th Cir. 1995).

The Magistrate Judge found that Plaintiff "has presented no evidence that Premier took or failed to take any action in a deliberate effort to force him to resign." ECF No. 56 at 11. Plaintiff objects to this finding, again, maintaining, "Premier had the power to and the reason to place Cole on leave with pay but instead chose to force Cole back to work with his harasser notwithstanding the admittedly incomplete state of its investigation." ECF No. 61 at 5. Plaintiff's objection is almost identical to the objection made to the Magistrate Judge's finding that Plaintiff failed to establish that Premier did not take remedial steps to end the alleged harassment. As detailed above, the record shows that Defendants took the matter seriously and intended to continue looking into the incident. Ultimately, Plaintiff's constructive discharge claim fails because Plaintiff is unable to establish that his decision to quit was the reasonably foreseeable consequence of Defendant's actions.

As a result, the court adopts the Magistrate Judge's Report and Recommendation. Defendant Ballard is dismissed **WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 4(m)[3]. Defendant's motion for summary judgment, ECF No. 28, is **GRANTED**, and Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

---

[3] As the Magistrate Judge notes, it appears that Defendant Ballard was never served with process, *See Order*, ECF No. 53).

7

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
March 30, 2017

8